IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEVON D. GRAHAM,

        Plaintiff,                   No. CIV S-07-2291 GGH P

    vs.

D.L. RUNNELS, et al.,

        Defendants.         <u>ORDER</u>

_____/

<u>Introduction & Motion for Clarification/Reconsideration</u>

        On September 30, 2010, this court filed an order granting in part and denying in part plaintiff's first motion to compel further discovery, while striking the second motion as duplicative. As to those requests for production to which the court ordered defendants to provide further responses/production, the undersigned narrowed/modified the requests. Nevertheless, defendants have filed a motion for clarification, reconsideration and relief from that order, arguing that the ruling was made without their having been afforded the opportunity to set forth fully their opposition because of the deficiencies of plaintiff's motion in failing to identify properly the requests at issue. Motion, pp. 1, 3-4. Defendants also protest that they do not have control of the documents at issue, that the documents to be produced are voluminous and unlikely to lead to the discovery of admissible evidence, that the production ordered places an

1

1  undue burden on the non-party California Department of Corrections and Rehabilitation
2  (CDCR). Id. at 2, 4-5. Defendants argue that the court has improperly shifted the burden of
3  showing they have control of the documents at issue. Id. at 5, citing U.S. v. International Union
4  of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989), in turn citing
5  Norman v. Young, 422 F.2d 470, 472-73 (10th Cir.1970) ("The party seeking production of the
6  documents ...bears the burden of proving that the opposing party has such control").

Defendants also protest that former state employees do not have the legal right to demand documents from non-party CDCR or High Desert State Prison; nor, they assert, does the Attorney General's Office have a legal right to demand CDCR documents – they can only ask for them. Motion, p. 5 & n. 1. Plaintiff, on the other hand, makes the point that under Cal. Code Regs. tit.xv, § 3370,[1] it appears that the Office of the Attorney General is among those that do have at least fairly ready access to, inter alia, case records file. Opposition (Opp., p. 2). In an effort to repudiate plaintiff on this point, however, defendants contend that § 3370 is a permissive regulation allowing release of records to the Attorney General's office but not addressing policy documents or requiring that all records requested be provided on demand. Reply, p. 4.[2]

---

[1] "No case records file, unit health records, or component thereof shall be released to any agency or person outside the department, except for private attorneys hired to represent the department, the office of the attorney general, the Board of Parole Hearings, the Inspector General, and as provided by applicable federal and state law. Any outside person or entity that receives case records files or unit health records is subject to all legal and departmental standards for the integrity and confidentiality of those documents." Cal. Code Regs. tit.xv, § 3370(e).

[2] Defendants correctly cite the referenced cases for the proposition at issue. The International Union case also defined "control" as the "legal right to obtain documents on demand." "Legal right" does not necessarily require a statute on point, but could be established by regulations or policies pertinent to the particular right of access at issue. Defendants would need to first assert, however, under oath, that they have no such legal right in order to bring plaintiff's burden into play. Moreover, even assuming such an assertion had been made by defendants (as opposed to their attorney), or assuming no statement was required by defendants personally, in order to comport with due process, plaintiff would have to be afforded an evidentiary hearing to prove his point given the lack of any other procedural device in which plaintiff could practically meet his burden. Defendants should be careful about which they demand in way of proof – they just might get all that they desire and then some.

Defendants note that when partially granting the motion, the undersigned modified and narrowed the requests; defendants contend that due to the modifications they believe no further production should be required. Id. at 6. Defendants argue that if they are still to be required to make further production, the court should first conduct an in camera review of all documents the CDCR considers to be confidential and that the production should be permitted only subject to a protective order solely for plaintiff's inspection with all personal information redacted to minimize any safety/security risk. Id. at 6. The court notes that in its order defendants were permitted time to fashion just such a proposed protective order (and have not yet done so). Although defendants concede that the official information privilege is not generally raised on a motion for reconsideration, they claim that it was only the court's order that made it clear to them that privileged policies were at issue. This appears to be an unreasonable argument in light of the fact that defendants had at least two prior and ample opportunities to attempt to rely on the privilege, both within objections to plaintiff's requests and in opposition to his motion to compel.

Standards For Motions To Reconsider

Although motions to reconsider are directed to the sound discretion of the court, Frito-Lay of Puerto Rico, Inc. v. Canas, 92 F.R.D. 384, 390 (D.C. Puerto Rico 1981), considerations of judicial economy weigh heavily in the process. Thus, Local Rule 230(j) requires that a party seeking reconsideration of a district court's order must brief the "new or different facts or circumstances ...claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion...and [] why the facts or circumstances were not shown at the time of the prior motion" (or, in this case, in response to the motion). The rule derives from the "law of the case" doctrine which provides that the decisions on legal issues made in a case "should be followed unless there is substantially different evidence

---

Nevertheless, given the discussion in the text, and further responses contained therein, no such evidentiary hearing need be held in this case.

1  . . . new controlling authority, or the prior decision was clearly erroneous and would result in
2  injustice." <u>Handi Investment Co. v. Mobil Oil Corp.</u>, 653 F.2d 391, 392 (9th Cir. 1981); <u>see also</u>
3  <u>Waggoner v. Dallaire</u>, 767 F.2d 589, 593 (9th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1064 (1986).

4        Courts construing Federal Rule of Civil Procedure 59(e), providing for the
5  alteration or amendment of a judgment, have noted that a motion to reconsider is not a vehicle
6  permitting the unsuccessful party to "rehash" arguments previously presented, or to present
7  "contentions which might have been raised prior to the challenged judgment." <u>Costello v. United</u>
8  <u>States</u>, 765 F.Supp. 1003, 1009 (C.D.Cal. 1991); <u>see also</u> <u>F.D.I.C. v. Meyer</u>, 781 F.2d 1260, 1268
9  (7th Cir. 1986); <u>Keyes v. National R.R. Passenger Corp.</u>, 766 F. Supp. 277, 280 (E.D. Pa. 1991).
10 These holdings "reflect[] district courts' concerns for preserving dwindling resources and
11 promoting judicial efficiency." <u>Costello</u>, 765 F.Supp. at 1009.

12       In the instant action, the court, although noting that plaintiff was burdening the
13 court by failing to specifically identify each request he wished to place at issue, found that
14 (although some production had been made) essentially the pro se plaintiff was contending that
15 each response was deficient based on the objections raised to virtually every response, which
16 plaintiff confirms in his opposition to the reconsideration motion. Opposition (Opp.), p. 2.
17 Essentially, the production that was required with respect to any sustained allegations of
18 excessive force as to either or both defendants should be located within the personnel files of
19 each defendant, notwithstanding that a number of years have passed or that each is retired. The
20 same applies to inmate grievances of excessive force with respect to each defendant. Even after
21 the passage of more than five years, any inmate grievances of excessive force that were sustained
22 or found to have substance should be retained in the defendants' files. The court finds it virtually
23 inconceivable that a correctional officer's personnel file should not contain a record, at the very
24 least, of sustained findings based on allegations of misconduct, including, of course, those related
25 to the excessive use of force. It even strains credulity that serious allegations of such
26 misconduct, whether ultimately sustained or not, would not be contained therein.

Defendants maintain that as to request nos. 1-11, wherein defendants were required to produce records of any other civil rights action filed against either or both in any court, alleging excessive or unreasonable force, that they have with this motion produced the only such action of which they are aware: <u>McNeal v. Fleming</u>, CIV-S-02-2524 MCE JFM P, accusing, inter alia, defendant Martin of the use of excessive force. Motion, p. 6 & Exhibit (Ex.) A. Defendants go on to assert that no responsive documents exist to the court's order to produce records of any sustained allegations of excessive force against either or both defendants from December 20, 1996 through December 20, 2002.[3] Therefore, the court finds that it can require no more and defendants have discharged the order at issue as to plaintiff's RFP nos. 1through 11.

As to RFP no. 24, defendants seek clarification of the court's order that defendants produce any documentation wherein defendants are alleged to have done nothing while excessive force was used in their presence in any other incident for the period from December 20, 1996 through December 20, 2002. Motion, pp. 6-8. Defendants' declarant R. Dreith, HDSP Litigation Coordinator, states, inter alia, that the computer system tracking inmate grievances was not operational until 2004; thus, to locate any documentation wherein either defendant was alleged to have done nothing while excessive force was used in their presence would have to be done by manual retrieval and review. Motion, Declaration of R. Dreith (docket # 54-7) ¶¶ 1, 5-6. In contrast, plaintiff contends that declarations produced by defendants to support their claims regarding the onerousness of attempting to produce responsive documents appear to contradict the portions of the DOM that suggest more organized record-keeping. Opp., p. 4 & Exs. 2 & 3. However, in reply, defendants note that it was a non-party HDSP official that described the procedures and assert that logs and records maintained at HDSP contain staff names only if a staffmember is the victim, which records are maintained for a maximum of seven years. Reply, p. 6, Supplemental Dreith Dec. (docket # 61-2), ¶¶ 1-17. Dreith declares that the

---

[3] Moreover, in their reply, defendants note that plaintiff has not taken issue with the supplemented responses with respect to these requests for production. Reply, p. 5.

1  DOM provision to which plaintiff referred does not apply in the context of the time period at
2  issue.  Supp. Dreith Dec. (docket # 61-2), ¶¶ 19-20.  Notwithstanding, declarant Dreith avows
3  that he made a diligent search of logs and records that have been maintained and has confirmed
4  that there are no responsive records that exist for the period from December 20, 1996, until
5  December 20, 2002, that involve allegations that defendants Martin and Kopec did nothing while
6  excessive force was used in their presence.  Id. at ¶ 21.  In addition, declarant John Day,
7  employed by CDCR as a Chief of Headquarters Operations at the Office of Internal Affairs
8  (OIA), states under oath that he has conducted a diligent search for any such allegations among
9  the OIA's logs and records against the defendants for the time period at issue and similarly has
10 found that no responsive documents exist.  Reply, Declaration of J. Day (docket # 1-2).

11         The court clearly intended that any such records to be produced were to be
12 sustained and not unsubstantiated complaints or insubstantial grievances.  Defendants have
13 provided evidence that no records of any such sustained allegations exist.  Although this appears
14 to reflect a defective CDCR records retention policy, i.e., one where it is not routine to retain
15 within individual personnel files records of any significant misconduct or allegations of such,
16 based on the declarations produced, the department will not be burdened with reviewing the
17 individual inmate files wherein any such grievances might be maintained.  Therefore, the court
18 finds as to this request that defendants in supplementing their responses with further declarations
19 have discharged the order as to RFP no. 24.  Defendants are cautioned, however, that should it
20 come to light that they have access to any such information by way of defendants' personnel files
21 or other records, sanctions will ensue.

22         As to RFP nos. 15, 16 and 35, defendants assert that the court has required them
23 to produce policies spanning a fourteen-year period and seek to make their arguments against this
24 production in this motion.  Apparently, defendants have added the time periods from the various
25 request to reach this span of time.  The order explicitly states:

26         As to RFP no. 15, defendants will be required to produce the

6

> HDSP correctional operational manual in effect at HDSP but only
> from the date of the incident, December 20, 2001, to the present,
> and as to RFP. no. 16, any HDSP manuals for officers for that
> period relating to the handling of inmates housed in the Ad Seg
> unit. Id. at 20.

Order, filed on September 30, 2010, p. 10.

At most, this is a period of approximately nine years. As to RFP no. 35, the period of time covered is six years:

> Plaintiff's motion as to RFP no. 35, wherein plaintiff asks for all
> policies, directives, etc., in effect regarding use of force at HDSP
> from December 20, 1996, is granted only to the extent not covered
> by the court's other rulings herein and only for the period
> from December 20, 1996 to December 20, 2002.

Id. at 12.

In arguing for the first time that such policies are not reasonably calculated to lead to the discovery of admissible evidence, defendants observe that defendant Martin has conceded that the 40B round used during plaintiff's cell extraction was not in compliance with policy and that it would be stipulated to at trial that defendant Martin's discharge of a 40B cartridge in plaintiff's cell was unauthorized. Motion, p. 8 & Ex. B to Declaration of Deputy Attorney General Jaime Ganson, defendants' counsel (docket # 54-3, ¶ 6; docket # 54-5, pp. 3-4). Defendants contend that plaintiff has indicated that a T21 cartridge containing Oleoresin Capsicum (OC) should have been used instead of the 40B round. Id. However, the excerpt of plaintiff's deposition cited by defendants to support the claim that petitioner essentially agrees that the cartridge containing Oleoresin Capsicum should have been used instead is not precisely confirmed; rather, what plaintiff indicates is that it is only the use of the 40B stinger that is at issue in his excessive force claim. Motion, Ex. A (docket # 54-4, 9[4]:9-24) to Ganson Dec. (docket # 54-3), ¶ 5. Defendants maintain that the launcher used could be employed to discharge both a round of T21 OC and the 40B round. Reply, p. 8, citing defendant Martin's response to

---

[4] The court's electronic pagination is referenced.

plaintiff's interrogatories (Ex. B to Motion, docket # 54-5). Therefore, defendants argue, the only material facts that remain in dispute are whether defendant Martin's unauthorized 40B stinger discharge was intentional and whether defendant Kopec had sufficient notice such that his failure to intervene constituted deliberate indifference. Id. at 8-9; see also, Reply, pp. 1-2.

While defendants aver that the disputed issues do not implicate policy questions, plaintiff, however, argues that the policies are needed to fully understand what occurred, that not only use of the gas gun first itself and the discharge of the 40 B stinger round violated policy but so also did use of the T21 cartridge. Opposition (Opp.), p. 7. Defendants' argument, although belated, is arguably well-taken, in part, as to the relevance of any policy in effect at HDSP when it is undisputed that defendant Martin's use of the 40B round violated policy and defendants are willing to stipulate to this at trial. Id. at 8-9. Moreover, defendant Kopec argues that to the extent that any allegation that he had sufficient notice to intervene such that his failure to do so constituted deliberate indifference, policy concerns are not implicated. Id. Defendants cite Whatley v. Philo, 817 F.2d 19, 21 (5th Cir. Tex. 1987), for the proposition that any state law violation is a matter of state, not federal constitutional, law. However, of course, as that case also notes, a violation of state law sometimes does implicate a federal right, e.g., when a state-mandated procedure is "denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected." Whatley, supra, [internal quotation omitted].

Plaintiff seeks to make use of the appropriate steps contained in policies and practices for cell extraction to show that deviation therefrom could lead to the inference that defendant [Martin] intended to injure him. Opp., p. 5, citing Miller v. Leathers, 913 F.2d 1085, 1088 (4th Cir. 1990) (undisputed fact that officer removed disruptive inmate from cell in absence of presence of higher-ranking officer in violation of regulation when plaintiff had filed grievance against officer could lead to inference of retaliation). In any event, defendants request that if any such production is required it "be narrowed to those policies governing the use of force during

cell extractions which were in effect during" plaintiff's cell extraction. Plaintiff appears to concede in his opposition that he is only seeking production of "policies, regulations, and other documents regarding the use of force, cell extractions, the use of less-than-lethal weapons, training regarding the use of force and cell extraction." Opp., p. 6. Defendants could have done their job in initially opposing the motion. Nevertheless, the court will revisit this requirement and limit the response to production of HDSP policies in effect specifically with regard to use of force during cell extractions for a period of a year, that is, six months before the December 20, 2001 cell extraction until six months later, that is, until the end of June, 2002. Defendants submit a declaration from an HDSP associate warden related to another case expressing safety and security concerns with regard to any disclosure of an HDSP Operational Procedure, No. 102, which outlines the policies and procedures for, inter alia, deploying a response force for a major disturbance. Motion, Ex. C (docket # 54-6), Declaration of M. Wright. Defendants need not produce policies and procedures which extend beyond use of force for cell extractions such that defendants' concern for safety and security procedures being compromised with respect to double celling, ICC hearings, etc., should not be implicated. The court will grant defendants' request for in camera review of responsive documents (Motion, p. 6; Reply, p. 2) within this significantly more restricted time period, which time period should provide plaintiff with any relevant information sought while substantially reducing the burden on CDCR or defendants' counsel. In addition, a strictly enforced protective order should obviate any other potential security concern.

        Finally, as to RFP no. 26, wherein the court required defendants to produce "use of force critique documents referencing any of defendants for High Desert State Prison from December 20, 1996" (which does cover a fourteen-year period), these were ordered produced to the extent not already covered by the court's ruling on the discovery motion. See Order, filed on September 30, 2010 (docket # 52) pp. 11-12. In initially responding to the request, defendants had asserted that they had no such responsive documents not deemed confidential; the undersigned found that defendants had made the conclusory averment of the confidentiality of

any such documents without any effort to substantiate it.  Now defendants proffer a belated argument that only defendant Martin recalls a use of force critique that took issue with his conduct, the use of force at issue in this case, and that plaintiff has been previously provided with the use of force critique concerning his claim.[5]  Motion, p. 12.  Defendants further contend that as incident packages (containing use of force critiques) are logged with a number and an inmate name, thus in sum, some 7000 incident packages would have to be reviewed at HDSP to locate any referencing either of the defendants and moreover, a search would have to be conducted at each institution where either had been employed since 1996, all of which is estimated to take at least four months.  Id. & Dreith Dec. ¶¶ 19-23.  Counsel for defendants has declared that counsel's own review of the Attorney General's Office's "entire file" in this action reveals that the use of force critique concerning the subject incident had apparently been provided to plaintiff as of April, 2010.  Motion, Ganson Dec. (docket # 54-3) ¶ 4.  The court notes again that it beggars belief that defendants would have to recall whether there had been a use of force critique issued as to any conduct in which either engaged at least a record of which would not be noted in the defendants' respective personnel files.  No further production will be required based on the averments of its onerous burdensomeness, but counsel for defendants is cautioned again that sanctions will be imposed should such information actually be routinely retained within the personnel files of the defendants or should counsel have more ready access to any responsive material.  As the current order on this request is not maintained, defendants' request for a six-month extension from the date of this order to obtain responsive documents and to redact confidential information about personnel and inmates involved is denied as moot.  Id. at 12-13.[6]

---

[5] Defendants contend that the use of force critique does not find defendant Martin's use of force unreasonable but that he was found to have failed to comply with policy in failing to check his ammunition before use, which resulted in training with regard to identifying and using authorized weapons during cell extractions.  Motion, p. 12.

[6] Defendants raise RFP no. 32 for the first time in their reply, which is unfair to plaintiff in depriving him of the ability to respond.  Reply, p. 10.  However, as defendants therein were directed to produce any photographs or video concerning the incident that have not been

Motion for Leave to file a Second Amended Complaint

Plaintiff seeks leave to proceed on a second amended complaint. Under the applicable provision of the Federal Rules of Civil Procedure, at this point in the case, plaintiff "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a) (2). "The court should freely give leave when justice so requires." Id.

Defendants move to strike the second amended complaint, citing Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979) ("[L]eave to amend is by no means automatic"); Braddock Fin. Corp. v. Wash. Mut. Bank, 637 F. Supp.2d 924, 933 (D.C. Colo. 2009) (plaintiff must seek leave to amend by separate motion). Docket # 59.

Discussion

In the introduction to his proposed second amended complaint, plaintiff seeks leave to proceed upon a further amended complaint, contending that he has learned facts that will support a claim against D.L. Runnels for deliberate indifference in failing to properly train and/or supervise his subordinates. Proposed Second Amended Complaint (docket # 56), p. 1. His contention is that Runnels failed to properly train defendant Martin in the appropriate application of force and use of weapons. Id. He also seeks to clarify or add this claim as to defendant Kopec, who is already a defendant in this action.

Plaintiff's original complaint was filed on October 26, 2007. By Order, filed on March 3, 2008, several defendants were dismissed from the complaint, including defendant Runnels, with leave to amend. Plaintiff filed an amended complaint on March 31, 2008, and another amended complaint, entitled the first amended complaint, on May 21, 2008. By Order, filed on June 30, 2008, the court noted that the May 21, 2008, amended complaint superseded the March 31, 2008 amended complaint, and found service appropriate for defendants Martin and Kopec. Thus, at the time that the court ordered service of process upon these defendants, by

---

produced, and defendants have responded that no such documents or videos exist, they are correct that no further response should be required.

Order filed on August 5, 2008, plaintiff had been permitted two opportunities to amend his complaint. Defendants' motion to dismiss was denied by Order, filed on September 14, 2009, and the answer was filed on October 5, 2009. This case has been proceeding now for nearly 39 months.[7]

> Under Federal Rule of Civil Procedure 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires." A district court, however, may in its discretion deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir.2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009).

The gravamen of the first amended complaint upon which this action proceeds is that defendants Correctional (Corr.) Captain T. Kopec and Corr. Sergeant A. Martin used excessive force in violation of the Eighth Amendment in a cell extraction of plaintiff at High Desert State Prison (HDSP) on December 20, 2001, for which plaintiff seeks compensatory and punitive damages. First Amended Complaint, pp. 1-5.

Plaintiff's generalized claim that he can now support a claim for deliberate indifference as to a previously dismissed defendant is simply not grounds to permit yet another version of his allegations to proceed. To do so would unduly prejudice defendants and would also unjustifiably burden this court with ever more prolonged litigation. His delay is proposing this proposed second (actually, third) amended complaint is unjustified on its face. Moreover, plaintiff's new allegation does not have the appearance of a sustainable claim. Plaintiff in the proposed second amended complaint continues to seek only monetary damages (compensatory and punitive). Plaintiff was previously informed that in order to proceed on a claim for money

---

[7] The court notes that at the time of the filing the proposed amended complaint, the case had already been proceeding for more than three years.

12

damages, he must link the conduct of an individual defendant to the unconstitutional deprivation he claims to have suffered.  See Order, filed on March 3, 2008, p. 8. Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Defendant's motion to strike the proposed amended complaint will be granted.

Request for Appointment of Counsel

Plaintiff has requested the appointment of counsel.   The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  Plaintiff contends that, inter alia, obtaining counsel will obviate any concern by defendants with regard to the disclosure of certain documents; however, as this court will conduct an in camera review prior to disclosure of those documents that defendants aver will implicate security and safety concerns, and any such disclosure will be pursuant to a strictly enforceable protective order, that court, in the present case, does not find the required exceptional circumstances.  Plaintiff's request for the appointment of counsel will therefore be denied.

Accordingly, IT IS ORDERED that:

1. Defendants' October 11, 2010 (docket # 54) motion for clarification, reconsideration and relief from order (docket # 52), is granted to the extent that it is modified herein;

2. Defendants have twenty-eight days to submit to this court's chambers for in camera review those responsive documents as modified above to RFP nos. 15, 16 and 35; within the same period defendants must file a proposed protective order for any material that might be disclosed following the court's in camera review of documents submitted;

4. Defendants' November 16, 2010 (docket # 59) motion to strike the proposed second

amended complaint (docket # 56), is granted; and

    5.  Plaintiff's December 16, 2010 (docket # 62) request for the appointment of counsel is denied.

DATED: 01/24/2011

                                  /s/ Gregory G. Hollows

                                  U.S. MAGISTRATE JUDGE

GGH:009
grah2291.rcn+